UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **SONIA HERNANDEZ CARUSO,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:24-CV-00217-DII** |
| | § | |
| **TEXAS MEDICAL BOARD, ET AL.,** | § | |
| *Defendants* | § | |

<u>**REPORT AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>

**TO:  THE HONORABLE UNITED STATES DISTRICT COURT**

Before the Court are Defendants' Motion to Dismiss, filed April 11, 2024 (Dkt. 9); Plaintiff's Response to Defendants' Motion to Dismiss, filed April 26, 2024 (Dkt. 11); and Defendants' Reply in Support of Their Motion to Dismiss, filed May 2, 2024 (Dkt. 12).[1]

## I.    Background

Dr. Sonia Hernandez Caruso, D.O., proceeding *pro se*, brings this suit under 42 U.S.C. § 1983 against the Texas Medical Board ("TMB" or "Board") and its President Sherif Zaafran, General Counsel Scott Freshour, and current and former Litigation and Enforcement Managers Amy Swanholm and Susan Rodriguez, respectively ("Individual Defendants").

### A.  Texas Medical Licensing

The Texas Medical Practice Act provides that the TMB "is an agency of the executive branch of state government with the power to regulate the practice of medicine" in the State of Texas. TEX. OCC. CODE § 152.001. The TMB "at its sole discretion, may issue a license to practice

---

[1] By Text Order issued May 30, 2024, the District Court referred the motion and related filings to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

medicine to a person who: (1) submits to the board a license application as required by this chapter; (2) presents satisfactory proof that the person meets the eligibility requirements established by this chapter; and (3) satisfies the examination requirements of Section 155.051" *Id.* § 155.002. The Board may also issue a "limited" or "restricted" license to a physician and require the applicant to obtain "additional qualifications . . . including education and examination requirements" before being able to receive a full license. *Id.* § 155.006.

An application for a medical license is initially reviewed by the TMB's Licensure Committee, which makes a recommendation to the full Board whether a license should issue. *Id.* § 155.007(c). An applicant declared ineligible for a full license may request a hearing before an administrative law judge ("ALJ") of the State Office of Administrative Hearings ("SOAH"). *Id.* § 155.007(e). After receiving the ALJ's proposed findings of fact and conclusions of law, the TMB determines the applicant's eligibility and provides the applicant "who is denied a license a written statement containing the reasons for the board's action." *Id.* § 155.007(f). A person whose license to practice medicine has been revoked or who is subject to other disciplinary action by the board may appeal to a Travis County district court not later than the 30th day after the date the board decision is final. *Id.* § 164.009.

Federal and state law require the Board to report a disciplinary action against a physician to the National Practitioner Data Bank ("NPDB")[2] "to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." *Van Boven v. Freshour*, 659 S.W.3d 396, 397-98 (Tex. 2022) (quoting 42 U.S.C. § 11101(2)); *see also* TEX. OCC. CODE § 164.060(b)(4) ("Not later than the

---

[2] The NPDB is a federal program that collects and provides information about professional malpractice lawsuit judgments and disciplinary and termination reports to health care organizations and facilities, professional license regulating governmental agencies, and third-party payors for health care insurance coverage. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 704 (Tex. App.—Amarillo 2018, pet. denied).

30th day after the date the board takes disciplinary action against a physician, the board shall report that action, in writing, to . . . the United States Secretary of Health and Human Service or the secretary's designee. . . .").

## B. Caruso's Applications

Caruso earned a Doctor of Osteopathic Medicine ("D.O.") from Ohio University College of Osteopathic Medicine in 2006 and completed an ophthalmology residency at St. John's Episcopal Hospital and Interfaith Medical Center in Brooklyn, New York in 2011. Dkt. 9-1 at 2.[3] Caruso moved to Texas the same year and works for Signify Health as an independent contractor performing in-home medical and eye examinations. *Id.* at 5. She travels for her work from Texas to New Mexico and New York, where she has active medical licenses. *Id.*; Dkt. 9-2 at 5.

Caruso applied for a Texas medical license on April 14, 2011 ("2011 Application"). *Id.* at 2, 5. Caruso and her attorney appeared before the TMB's Licensure Committee on November 29, 2012. Dkt. 9-1 at 2. The Licensure Committee recommended that the full Board deny the 2011 Application "based on a failure to practice medicine in a competent manner consistent with public health and welfare, as well as disciplinary action taken against Dr. Hernandez by a health care entity due to unprofessional conduct and professional incompetence likely to harm the public." *Id.* at 2-3. The Licensure Committee also recommended that the Board grant Caruso a physician-in-

---

[3] *See* Final Order in *In re App. for License by Sonia Hernandez, D.O.,* Docket No. 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.DO (March 4, 2022) (Dkt. 9-1). Defendants attached the TMB's Final Order to their Motion to Dismiss. Because Caruso refers to the TMB Final Order in her Complaint, Dkt. 1-2 at 1, and it is central to Plaintiff's claims, the Court may consider it. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (when ruling on a Rule 12 motion, a court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim"). The Court also relies on the docket of Caruso's proceedings before the Board, available at https://www.soah.texas.gov/soah-case-records-search. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating that courts may take judicial notice of matters of public record when ruling on a Rule 12 motion).

training permit for a training program of at least one year in ophthalmology if she applied for the permit within the calendar year. *Id.* at 3.

The Board adopted the recommendations and denied the 2011 Application. *Id.* Caruso appealed and requested a contested hearing before the SOAH. The ALJ held a hearing and issued a Proposal for Decision finding that Caruso had not shown she was eligible for an unrestricted Texas medical license "because, among other things, she had not performed surgery since 2011 and she needed additional training before she could safely operate again." *Id.* The Board issued a Final Order on December 3, 2015 ("2015 Final Order") adopting the ALJ's findings of fact and conclusions of law and found Caruso ineligible for a Texas medical license. *Id.*

Caruso submitted another application on April 2, 2018 ("2018 Application") and appeared before the Licensure Committee on April 15, 2019. *Id.* at 5. The Licensure Committee determined that there had been no substantive changes in Caruso's surgical training since December 2015 and recommended that the full Board deny the 2018 Application. *Id.* The Board adopted the Licensure Committee's recommendations and denied her 2018 Application. *Id.* Caruso appealed that decision and requested a hearing before the SOAH.

The ALJ held a hearing on December 9-10, 2020, at which Caruso appeared and represented herself. *Id.* After the hearing, the parties submitted their written closing arguments. *Id.* The ALJ issued Findings of Fact and Conclusions of Law agreeing that Caruso's 2018 Application should be denied. *Id.* On March 4, 2022, the Board adopted the ALJ's Findings of Fact and Conclusions of Law and issued its Final Order ("2022 Final Order") granting Caruso a license to practice medicine, subject to the following terms and conditions:

> Applicant is RESTRICTED from performing any ophthalmological surgical procedures, including any from or eye surgery, laser procedure, intra-viscous procedures, or injections.

> This restriction will remain in effect until such time as Applicant requests permission in writing to resume such surgical practice, personally appears before the Board to orally petition for the restriction to be lifted and provides clear and convincing evidence and information which in the discretion of the Board adequately indicates that Applicant is competent to independently perform such surgical procedures. Such evidence and information shall include at a minimum, but shall not be limited to, evidence that Applicant has completed an ACGME approved ophthalmology surgical training program.
>
> Upon presentation of clear and convincing evidence to the Board that Applicant is competent to independently perform ophthalmological procedures, the restriction may be lifted under such terms and conditions and for such time that the Board in its discretion determines are necessary to adequately protect the public.

*Id.* at 7. Caruso filed a Motion for Rehearing with the SOAH, which was denied. Caruso did not file an appeal in state court.

After it issued its 2022 Final Order, TMB updated Caruso's public physician profile on its website, stating that "Disciplinary Restrictions" had been placed on Caruso's license and referencing the 2022 Final Order, and notified NPDB of those restrictions. Dkt. 1-2 at 1; Dkt. 9 at 1-2.

Caruso argues that posting this information on the TMB website and reporting it to NPDB "was wrong, false, misleading and misrepresented the facts of December 9, 2020 SOAH's findings of fact and conclusions of law." Dkt. 1-2 at 1. She argues that the December 9-10, 2020 SOAH hearing "was for an **Application for licensure, NOT** for an Adjudicative hearing for **Disciplining** Plaintiff." *Id.*

## C. Litigation

Caruso alleges that the restrictions placed on her Texas medical license caused her to lose employment contracts, disparaged her business reputation and defamed her. *Id.* at 2. In her Complaint, Caruso alleges that the Board's actions: (1) violated her due process rights under the

Fifth and Fourteenth Amendments; (2) constituted sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e; (3) tortiously interfered with her employment contracts, in violation of Texas law; (4) disparaged her business reputation, in violation of Texas law; and (5) constituted defamation and libel under Texas law. Caruso seeks monetary damages and asks the Court to order the TMB to remove the disciplinary restrictions from her medical license, its website, and the NPDB.

Defendants move to dismiss Caruso's claims under Rules 12(b)(1) and 12(b)(6), asserting sovereign immunity, qualified immunity, official immunity, and failure to state a claim for relief. In her response, Caruso for the first time asserts claims under the Eighth Amendment and Equal Protection Clause. The Court considers Caruso's newly raised constitutional claims because she is proceeding *pro se*.

## II.    Legal Standards

### A.  Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the court. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021). The party seeking to invoke subject-matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). At the pleading stage, the plaintiff's

burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publications, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021).

The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

## B.  Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Section 1983

Section 1983 of the Civil Rights Act provides for a private cause of action against anyone who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's constitutional rights. 42 U.S.C. § 1983. "A § 1983 suit may be brought against a person in his or her individual or official capacity as well as against governmental entities." *Mason v.*

*Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). To state a claim under § 1983, a plaintiff (1) "must allege the violation of a right secured by the Constitution and laws of the United States," and (2) "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Caruso alleges that Defendants' actions violated her due process rights, her equal protection rights, and her right to be free from cruel and unusual punishment under the Eighth Amendment. Defendants argue that they are immune from Caruso's claims under the doctrine of sovereign immunity.

## A. Sovereign Immunity

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment confirms "the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Id.* States have retained their traditional immunity from suit, "except as altered by the plan of the Convention or certain constitutional amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999). "A State may waive its sovereign immunity at its pleasure, and in some circumstances, Congress may abrogate it by appropriate legislation." *Stewart*, 563 U.S. at 253-254.

A state's sovereign immunity in federal court also extends to private suits against state agencies, departments, and other arms of the state. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429-430 (1997); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

Similarly, a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("That is so because a judgment against a public servant in his official capacity imposes liability on the entity that he represents.") (cleaned up). But under *Ex parte Young*, 209 U.S. 123, 167-68 (1908), a litigant may sue a state official in his official capacity if she seeks prospective relief to redress an ongoing violation of federal law. The theory of *Ex parte Young* is that an unconstitutional enactment is "void" and therefore does not "impart to the officer any immunity from responsibility to the supreme authority of the United States." *Id.* at 160. Because the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct." *Id.* The *Ex parte Young* exception does not apply to claims for injunctive relief against state officials based on state law. *See Pennhurst*, 465 U.S. at 100.

The Eleventh Amendment "does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983," so a plaintiff may bring a Section 1983 suit in federal court against a state official in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). In such actions, the defendant is entitled to raise personal immunity defenses, including qualified immunity. *Id.* at 31.

### 1. Texas Medical Board

The Board is a state agency. *See* Tex. Occ. Code § 152.001 ("The Texas Medical Board is an agency of the executive branch of state government with the power to regulate the practice of medicine."); *Emory v. Tex. State Bd. of Med. Examiners*, 748 F.2d 1023, 1025 (5th Cir. 1984); *Teladoc, Inc. v. Texas Med. Bd.*, 112 F. Supp. 3d 529, 533 (W.D. Tex. 2015) (same); *Van Boven*, 659 S.W.3d at 401 (same). TMB is entitled to sovereign immunity from Caruso's constitutional

claims unless Texas has waived its immunity or Congress has abrogated it. Congress has not abrogated state sovereign immunity under § 1983, *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020), and Texas has not waived it, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). The Board is entitled to sovereign immunity from Caruso's Section 1983 claims, and her arguments to the contrary are frivolous. *See Emory*, 748 F.2d at 1025 (finding that physician's Section 1983 claims against TMB were barred by Eleventh Amendment); *Allibone v. Texas Med. Bd.*, No. A-17-CA-00064-SS, 2017 WL 4768224, at *4 (W.D. Tex. Oct. 20, 2017) (same); *Zawislak v. Tex. Med. Bd.*, A-13-CA-0460-LY, 2013 WL 12136553, at *2 (W.D. Tex. Sept. 4, 2013) (same).

### 2. Individual Defendants

Caruso's Section 1983 claims against the Individual Defendants in their official capacities for monetary damages also are barred by sovereign immunity. *See Emory*, 748 F.2d at 1025 ("[T]o the extent any damage recovery would necessarily come from the state treasury, monetary relief against state agency officials is also precluded by the eleventh amendment."). But the Eleventh Amendment does not foreclose Caruso's claims for prospective injunctive relief (Dkt. 1 at 5-6). Those claims fall within the *Ex parte Young* exception and cannot be dismissed for lack of subject matter jurisdiction.[4] *See Emory*, 748 F.2d at 1025-26; *Allibone*, 2017 WL 4768224, at *4. Caruso's

---

[4] Caruso also argues that the Individual Defendants should be held liable because they acted *ultra vires, i.e.*, without legal authority. Dkt. 1-2 at 3. Under Texas law, "in certain narrow instances, a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Caruso does not plausibly allege such facts. In addition, "[w]hile Texas common law may waive the state's immunity for certain *ultra vires* actions in state court, that waiver does not apply to federal court absent a specific intention to subject itself to suit in federal court." *Horizon Bank SSB v. Patrick*, No. 1:23-CV-691-RP, 2024 WL 409728, at *4 (W.D. Tex. Feb. 2, 2024), *appeal dismissed sub nom. Horizon Bank S.S.B. v. Hegar*, No. 24-50133, 2024 WL 3937274 (5th Cir. May 9, 2024) (citation omitted). Because the *ultra vires* waiver does not expressly apply to federal court, sovereign immunity is not validly waived. *Id.*

constitutional claims against the Individual Defendants in their individual capacity also cannot be dismissed for lack of subject jurisdiction. *Emory*, 748 F.2d at 1026. But those claims can be dismissed for failure to state a claim. *Allibone*, 2017 WL 4768224, at *4.

## B. Due Process Claim

Caruso argues that the TMB officials violated her due process rights under the Fifth and Fourteenth Amendments by (1) failing to give her notice that she was being disciplined and why she was being disciplined; (2) issuing her a restricted medical license that prevented her from performing surgeries; (3) publishing "these disciplinary restrictions into their Final Order and published this information on the TMB website and to the NPDB"; and (3) refusing to grant her request for a rehearing and explain why her request was denied. Dkt. 11 at 4.

Caruso does not state a Fifth Amendment due process claim because the Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Caruso does not allege that Defendants were acting under authority of the federal government.

To prevail on her due process claim under the Fourteenth Amendment, Caruso must show she was deprived of life, liberty, or property without adequate notice or a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Caruso contends that she has a property interest in practicing "her chosen profession in Texas." Dkt. 11 at 10.

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). The Texas Medical Practice Act states that "the practice of medicine is a privilege and not a natural right of individuals" and that

legislative regulation of that privilege and its subsequent use and control "is necessary to protect the public interest." TEX. OCC. CODE § 151.003(1). But it has long been established that "a reasonable, continued expectation of entitlement to a previously acquired benefit, such as a medical license, constitutes a cognizable property interest for purposes of due process protection." *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988).

Caruso did not have a previously acquired license to practice medicine in Texas, only a desire to acquire a Texas medical license. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Caruso has no property interest in her expectation to obtain a Texas medical license. *See Shaboon v. Duncan*, 252 F.3d 722, 732 (5th Cir. 2001) (finding that unlicensed medical student working under an institutional permit did not have a property interest in clinical privileges at hospital).

Even if Caruso did have a protectable property interest in a Texas medical license, the TMB provided sufficient notice and an opportunity to be heard before it issued her a restricted medical license, which is all that the Due Process Clause requires. *Loudermill*, 470 U.S. at 542; *Ramirez*, 843 F.2d at 867. Before TMB issued a restricted license, Caruso:

- was notified of the hearing;
- appeared before the Licensure Committee to present her case;
- appealed that decision to an impartial ALJ, had a full hearing, and submitted written briefs afterward;
- appealed the ALJ's decision to the full Board;
- appeared before the Board on March 4, 2022;
- was notified of the Board's Final Order;
- requested a rehearing; and
- had the opportunity to appeal the Board's Final Order to a state district court, which she did not do.

Dkt. 9-1; Dkt. 11; SOAH Dkt. No. 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. The Court finds that she had notice and a meaningful opportunity to be heard before the Board issued her a restricted medical license. *See Ramirez*, 843 F.2d at 867-68 (finding that physician was provided sufficient due process before TMB revoked his medical license where he was provided notice and a hearing); *Allibone*, 2017 WL 4768224, at *4 (finding that physician was afforded his due process rights to challenge disciplinary proceedings against him where he was provided notice and had a hearing before an ALJ); *Scally v. Texas State Bd. of Med. Examiners*, 351 S.W.3d 434, 446–47 (Tex. App.—Austin 2011, pet denied) (holding that physician was provided due process where he received notice and a hearing before an ALJ before the TMB revoked his medical license).

Caruso's argument that the TMB violated her due process rights by denying her motion for a rehearing and failing to explain its ruling is also meritless because there is no provision in the Texas Medical Act or in the Texas Administrative Procedure and Practice Act requiring the TMB/ SOAH to grant a petitioner's request for a rehearing or inform the petitioner why the request was denied. *See* TEX. GOV'T CODE § 2001.146 The Texas Administrative Procedure and Practice Act states that a motion for rehearing may be denied "by operation of law" if the state agency fails to rule on the motion within 55 days. *Id.* The TMB did not deny Caruso due process when it denied her motion for rehearing or explain its reasons for doing so. *See San Diego Indep. Sch. Dist. v. Cent. Educ. Agency*, 704 S.W.2d 912, 916 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (rejecting school district's argument that agency order should be overturned because the agency refused to consider its motion for rehearing).

Caruso also argues that the Board failed to appoint a three-member disciplinary panel to determine whether Caruso's license should be restricted as required by Tex. Occ. Code § 164.059.

But that section applies only when the Board is determining whether a medical license should be revoked or suspended, not issued. *Id.*

> [E]ven if an action by a government entity violates its own rules or those of the state, there is no *constitutional* deprivation unless the conduct also trespasses on federal constitutional safeguards. As long as an individual receives notice and a hearing that satisfies federal due process, any violations of state law are completely irrelevant to constitutional analysis.

*Ramirez*, 843 F.2d at 867 (citation omitted).

Caruso's argument that her due process rights were denied because she was only notified that the Board was conducting a formal proceeding for "Application for Licensure" and not a formal proceeding "for Discipline" also fails. Dkt. 11 at 1. The Board notified Caruso that it would hold a hearing on her "Application for License" because she applied for a Texas medical license. *See* Exh. 3 to Caruso's Response to TMB's Response to Motion for Rehearing, SOAH Dkt. No. 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. That TMB determined Caruso should be issued a restricted medical license does not change this. *See Ramirez*, 843 F.2d at 868 (rejecting physician's argument that he was denied due process because the hearing notice described "a hearing with regard to liposuction procedure not Dr. Ramirez's license generally").

Caruso also contends that the TMB violated her due process rights when it published her "disciplinary" restrictions on its website and reported those restrictions to the NPDB. She argues that the information reported was false and misleading because the TMB should not label those restrictions as disciplinary. But issuing a person a restricted medical license is a disciplinary measure under Texas law. TEX. OCC. CODE § 164.001(a), (b)(3) (listing the Board's "restrict[ing] the person's license" as a "Method[] of Discipline"). And the TMB is required to report such restrictions to the NPDB and "professional societies of physicians in this state." TEX. OCC. CODE § 164.060(b)(2), (4); *see also* 42 U.S.C. § 11132(a) (requiring reporting a restricted license);

*Van Boven*, 659 S.W.3d at 397-98 ("Federal and state law require the [TMB] to report a disciplinary action against a physician to the [NPDB] in order 'to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.'") (quoting 42 U.S.C. § 11101(2)).

The TMB stated in its Final Order:

> The Board may refuse to issue a license to Dr. Hernandez based on a determination that she has not addressed the deficiencies identified in the 2015 Final Order that she: failed to practice medicine in a manner consistent with public health or welfare; had her hospital privileges terminated on the basis of unprofessional conduct or professional incompetence likely to harm the public; had not performed surgery since 2011; and needed additional training before she could safely operate again.

Dkt. 9-1 at 6. Under Section 164.051 of the Texas Medical Act, the TMB may "refuse to issue a license to practice medicine" to a person who "fails to practice medicine in an acceptable professional manner consistent with public health and welfare" or was limited privileges "based on unprofessional conduct or professional incompetence that was likely to harm the public." TEX. OCC. CODE § 164.051(a)(6), (7). Because Caruso's license was restricted based, in part, on a finding that she failed to practice medicine in a manner consistent with public health or welfare and because she had her hospital privileges terminated based on unprofessional conduct or professional incompetence, the restrictions were "disciplinary actions" under TEX. OCC. CODE §§ 164.051(a)(6), (7) and had to be reported.

Caruso also argues that the Board's findings were inaccurate because she was never found "to be incompetent" or "failed to practice medicine in an acceptable manner consistent with public health and welfare." Dkt. 11 at 8. The Court "is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood*, 426 U.S. 341, 349 (1976). The Court's review "is limited to whether the notice and hearing, provided

by an appropriate tribunal, were adequate to protect [Caruso's] legitimate property interests."

*Ramirez*, 843 F.2d at 867.

> We cannot overemphasize the limited role of federal courts in reviewing decisions such as this which are made by an agency of the state exercising its police powers as mandated by the Constitution. It is the duty of the Texas Board of Medical Examiners to protect the public from individuals who may endanger public health and safety through their practice of medicine. A federal court has no business intruding upon the substantive decisions of a public institution by substituting its judgment for that of the public body.
>
> As federal judges we are not required to determine whether [a physician's] hearing was letter perfect or the best that it could have been. Instead, we are required only to insure that [the physician] has received procedural due process as required under the United States Constitution.

*Id.* at 869.

This Magistrate Judge finds that Caruso was provided all the due process required under the Constitution. Because only deprivations without constitutional due process are actionable under Section 1983, she has no viable claim. *Id.*

## C.  Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV). To state a claim for equal protection, "the plaintiff must prove that similarly situated individuals were treated differently." *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003).

"Being similarly situated is key." *Hines v. Quillivan*, 982 F.3d 266, 272-73 (5th Cir. 2020). Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more

relevant persons or groups, then the action does not deny equal protection of the laws. *Id.* To determine whether persons or groups are similarly situated, courts "inquire as to whether they 'are in all relevant respects alike.'" *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Caruso argues that the TMB violated her equal protection rights by issuing her a restricted license when it issued three male doctors unrestricted licenses who had "never performed retina surgeries." Dkt. 11 at 9-10. Caruso claims that TMB discriminated against her by failing to issue her a full license because of her "race, national origin, gender and age." *Id.* at 11. These conclusory allegations do not raise a colorable claim for relief. Caruso pleads no objective factual allegations showing that the Board "intentionally discriminated" against her because of membership in a protected class. *Gibson*, 700 F.3d at 238. Nor does she allege that the three male doctors who were issued full licenses had also been found by the TMB to have failed to practice medicine "in an acceptable professional manner consistent with public health and welfare" or had limited privileges due to "unprofessional conduct or professional incompetence that was likely to harm the public." TEX. OCC. CODE § 164.051(a)(6), (7). She does not show that the male doctors were similarly situated in all relevant respects. *See Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2020) (former pastor failed to plead disparate treatment among similarly situated persons where comparators, unlike pastor, had not been indicted by a grand jury); *Wheeler v. Miller,* 168 F.3d 241, 252 (5th Cir. 1999) (plaintiff failed to show that his equal protection rights were violated where he "could point to no individual with a similarly poor academic performance who was awarded a doctorate"). Caruso's subjective belief that she was denied a full license due to her sex, race, national origin or age is not enough to show intentional discrimination. *See Mandawala v.*

*Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1151 (5th Cir. 2021) ("Subjective belief alone cannot prove intentional discrimination.").

### D. Eighth Amendment Claim

Caruso also argues that her restricted medical license has "so many restrictions" that it constitutes cruel and unusual punishment under the Eighth Amendment. The Cruel and Unusual Punishment Clause applies only to convicted prisoners and therefore does not apply. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019). She does not state a claim under the Eighth Amendment.

### IV.    Inapplicable Federal Statutes

Along with alleging constitutional claims under 42 U.S.C. 1983, Caruso also refers in her Complaint to 18 U.S.C. § 242; Title VII of the Civil Rights Act; 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and 2 U.S.C. §§ 11111-(2). Dkt. 1 at 4. None of these statutes applies.

Caruso lacks standing under 18 U.S.C. § 242, a criminal statute that does not provide for a private right of action. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Rockefeller v. U.S. Ct. of Appeals Off., for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).

Caruso also lacks statutory standing under Title VII to assert a discrimination or retaliation claim. Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge" under Title VII. 42 U.S.C. § 2000e-3(a). The statute permits "a person claiming to be aggrieved" to file a charge with the EEOC alleging that the employer committed an unlawful employment practice, and, if the EEOC declines to sue the employer, it permits a civil action to "be brought . . . by the person claiming to be aggrieved . . . by the alleged unlawful employment practice." § 2000e-5(b), (f)(1). The purpose of Title VII "is to protect employees from their employers' unlawful actions."

*Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011). The zone of interests Title VII protects is limited to those in employment relationships with the defendant. *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 668 (5th Cir. 2020). Because Caruso is not an employee of TMB, she lacks statutory standing to assert a claim under Title VII *See id.* (finding that because plaintiff was not an employee of defendant, he lacked Title VII standing).

Caruso's reliance on 42 U.S.C. § 1981 is also misplaced because Section 1983 provides the exclusive remedy against state actors for violations of rights guaranteed by Section 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463-64 (5th Cir. 2001).

Caruso also attempts to assert a claim under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101. That statute merely "provides immunity to health care providers against certain claims for money damages brought by participants in professional peer review actions." *Zawislak v. Mem'l Hermann Health Sys.*, No. 4:21-CV-3098, 2022 WL 4359231, at *2 (S.D. Tex. July 25, 2022), *R. & R. adopted*, 2022 WL 4358097 (S.D. Tex. Sept. 19, 2022). The HCQIA "does not create a private cause of action or confer federal jurisdiction over a case involving such an immunity defense." *Id.* (collecting cases).

Caruso also mentions 42 C.F.R. Part 1003 in her Complaint. Dkt. 1 at 4. That regulation deals with the Office of Inspector General's Civil Monetary Penalty Rules on Medicare and state health care program violations and does not apply to the facts and claims alleged here. *See* 42 C.F.R. § 1003.100. Caruso does not allege a plausible claim for relief under the cited federal statutes.

## V.    State Claims

Finally, Caruso asserts claims against the Board and the Individual Defendants for tortious interference with employment contracts, business disparagement, and defamation under Texas common law. 28 U.S.C. § 1367(a) provides that: "district courts shall have supplemental

jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive." *Brookshire Bros. Holding, Inc. v. Dayco Prods*., Inc., 554 F.3d 595, 602 (5th Cir. 2009) (internal citations omitted). The Court has "wide discretion" in deciding whether to exercise jurisdiction over state-law claims. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011).

Because all Caruso's federal claims fail, the Court recommends that the District Court decline to exercise supplemental jurisdiction over her state law claims.

## VI.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Dkt. 9), and

(1) **DISMISS** *without prejudice* Plaintiff's constitutional claims against the Texas Medical Board and the Individual Defendants in their official capacity for money damages for lack of jurisdiction under Rule 12(b)(1);

(2) **DISMISS** *with prejudice* Plaintiff's constitutional claims against the Individual Defendants in their official capacity for prospective injunctive relief and in their individual capacity under Rule 12(b)(6);

(3) **DISMISS** *with prejudice* Plaintiff's remaining federal claims under Rule 12(b)(6);

(4) **DECLINE** to exercise jurisdiction over Plaintiff's state law claims and **DISMISS** those claims *without prejudice*; and

(5) **ENTER** Final Judgment in favor or Defendants.

**IT IS ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable District Court.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 22, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE